UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-                                    Case # 23-20298

                                                HON. JUDITH LEVY

WENDY BEARD,

        Defendant.
_____/

## SENTENCING MEMORANDUM FOR DEFENDANT BEARD

### STATEMENT OF THE CASE

On July 13, 2023, Wendy Beard pled guilty to an information charging her with wire fraud. In the Rule 11 agreement, the parties agreed to a base offense level of seven with a two-point enhancement for more than ten victims (§2B1.1(b)(2)(A)(i) and an additional two-point enhancement because the offense involved a vulnerable victim (§3A1.1(b)(1).

At the time, the parties disagreed on the loss amount with the government contending that the loss was between $1,500,000 and $3,500,000 while the defense contended that the loss was between $550,000 and $1,500,000. The defense now agrees with the government's position which would result in a

-1-

sentencing guideline range of 51-63 months based on a total offense level of 24 and a criminal history category of I. The Rule 11 also contained an appellate waiver if Ms. Beard's sentence did not exceed 63 months.[1]

The Probation Department calculated Ms. Beard's sentencing guideline range at 78-97 months based on a total offense level of 28 and a criminal history category of I. The differences in the Probation Department's calculation resulted from two additional points for a loss amount of in excess of $3,500,000, and an additional two points because the offense involved more than five vulnerable victims.

The defense contends that the correct guideline range should be 51-63 months based on a total offense level of 24 and a criminal history category of I.

The purpose of this memorandum is to request that the Court, after taking into account Ms. Beard's health problems, impose a sentence well beneath the guideline range consistent with the criteria set forth in 18 USC §3553(a).

**1. Sentencing guideline disputes**

**A. Loss amount**

The Probation Department calculated the loss amount at $3,571,910.29, which resulted in an 18-point enhancement to the base offense level. That figure

---

[1] Rule 11 agreement, § 10

was approximately $72,000 higher than the government's loss figure (which the defense now agrees to) in the Rule 11 agreement. The defense takes issue with that figure for a couple of reasons.

To begin with, the value of the various items fluctuates over time, depending on the state of the market for art work. In addition, the alleged value of many of the items was provided to the Probation Department by the owners themselves, without any independent analysis. Third, a government expert recently valued nearly seven hundred items seized in Ms. Beard's Florida location and now in the possession of the government at approximately $156,000. Finally, the defense provided documentation to the Probation Department showing that Ms. Beard made payments of in excess of $92,000 to three of the victims during the time of the offense.

Because the loss amount calculated by the Probation Department is close to the $3.5 million cap for a 16-point enhancement, and considering the above reasons set forth by defense counsel, the Court should conclude that the loss amount was less than $3.5 million and apply the 16-point enhancement contained in the Rule 11 agreement. If the Court agrees with the defense, that would reduce Ms. Beard's sentencing guideline range by two points.

**B. Victim-related adjustment - substantial financial hardship**

In the Rule 11 agreement, the parties included a 2-point enhancement pursuant to § 2B1.1(b)(2)(A)(i) because there were more than ten victims. The parties did not include any enhancement for victims suffering substantial financial hardship.

Instead of applying the above 2-level enhancement, the Probation Department applied a 4-level enhancement pursuant to § 2B1.1(b)(2)(B), stating that the offense resulted in financial hardship for five or more victims. The Probation Department based this enhancement on statements made by nine victims in their Declaration of Victim Losses.

§ 2B1.1, Application Note 4(F) sets forth the factors that should be considered in determining whether this enhancement applies. Having reviewed the submissions by the nine victims, the defense contends that at least five of those victims do not satisfy the factors contained in the Application Note. The defense, therefore, urges the Court to apply the enhancements contained in the Rule 11 agreement and omit the 4-point enhancement suggested by the Probation Department.

**C. Guideline calculations**

For the reasons stated above, the defense suggests that the correct guideline

range is 51-63 months based on a total offense level of 24 and a criminal history category of I.

## DISCUSSION

18 U.S.C. §3553(a) sets forth the following considerations for the Court to consider in imposing sentence:

- the nature and circumstances of the offense;

- the history and characteristics of the defendant;

- the seriousness of the offense;

- the need to afford adequate deterrence;

- the need to protect the public from the defendant; and

- the need to avoid creating unwarranted sentence disparities.

Upon consideration of these factors, the Court should then impose a sentence that is "sufficient, but not greater than necessary," to satisfy the purposes of the sentencing statute.

### 1. Nature and circumstances of the offense

There is no doubt that this is a serious offense, given the number of victims and the amount of the fraud. The defense neither denies nor makes excuses for the underlying conduct. At the same time, the Court should also consider the fact that Ms. Beard accepted responsibility and pled guilty, which saved the government

-5-

significant time and resources.

### 2. History and characteristics of the defendant

#### A. Family background

In searching for reasons to explain Ms. Beard's conduct in this case, her history and characteristics offer some hints. During her childhood, her parents pushed her to be successful, and were at times overly critical, including verbal abuse from her father.[2] Having said that, she was very close to her parents, and suffered greatly when her mother died in 2017 from a myriad of health conditions including a heart attack, multiple myeloma, and kidney failure.[3] Her father's death from complications of pneumonia followed in 2019.

Ms. Beard and her husband have been married for twenty-five years. After being unable to conceive, they were able to have twin children through surrogacy. The children are now in college and are obviously concerned about what will happen to their mother.

#### B. Physical and emotional health

Ms. Beard's physical health is problematic at best. As indicated by the Probation Department, she suffers from chronic inflammation and

---

[2] Pre-sentence report, § 75

[3] Pre-sentence report, § 74

hardening/scarring of the lungs, lupus, and rheumatoid arthritis. She also had surgery to remove melanoma from her cheek and the roof of her mouth. She is currently being treated for all of these conditions by multiple physicians at the University of Michigan.[4]

Ms. Beard's mental and emotional health is not much better than her physical condition. She began seeing a mental health counselor in July, 2023 because she felt that she was having an emotional breakdown. Although she feels that she is in a better place today, it is still a matter of concern to defense counsel.[5]

### C. Employment history

Ms. Beard was involved in the art gallery business for approximately thirty years. She first worked for her father at the Halsted Gallery and then opened the Wendy Halsted Gallery, which she operated from 2006 to 2021, until it was closed as a result of this case. It is notable that, at least to defense counsel's knowledge, there were no complaints about Ms. Beard's operation of the gallery until some time in late 2018.

Since the closing of the gallery, Ms. Beard has been working as a sales

---

[4] Pre-sentence report, § 80. It is worth noting that Ms. Beard's medical diagnoses were verified by the Probation Department through her medical records, which are maintained in the Deparment's file and available for the Court's review.

[5] Pre-sentence report, § 81. The specifics of her emotional problems are described in this paragraph and need not be included in this memorandum that will be available to the media.

representative, earning approximately $900.00 per week.[6]

### D. Financial situation

Perhaps the strangest aspect of this very strange case is Ms. Beard's financial status as detailed by the Probation Department.[7] For a woman who is alleged to have obtained millions of dollars through her illegal conduct, she has minimal assets. Her home is burdened by a large mortgage as well as a lien due to a civil lawsuit. On information and belief, when law enforcement came to the home to seize items that might be used to satisfy the judgment, they essentially found nothing worth taking. She earns a modest wage and owes a significant amount to creditors, not to mention nearly $500,000 in other civil judgments.

Based on its review of Ms. Beard's finances, the Probation Department concluded that: (a) she does not have the ability to pay a fine or costs of incarceration/supervision; and (b) she may have the ability to make "nominal periodic payments" toward restitution.[8]

Defense counsel contend that Ms. Beard's history, characteristics, physical and emotional health, and financial situation, support the imposition of a sentence

---

[6] Pre-sentence report, §§ 85-88

[7] Pre-sentence report, §§ 89-94

[8] Pre-sentence report, § 94

-8-

below the guideline range.

### 3. Other 3553(a) factors

#### A. Deterrence - (a)(2)(B) and (a)(2)(C)

As indicated by the Probation Department, this case has received an inordinate amount of attention by the media which, in itself, should be enough to deter others from similar conduct. With respect to Ms. Beard, defense counsel agree with the Probation Department that this offense "appears to be a marked deviation from an otherwise law-abiding lifestyle."[9] In addition, since she is now out of the art gallery business, the chances of Ms. Beard re-offending appear to be nil.

#### B. The need to provide restitution - (a)(7)

Due to Ms. Beard's financial situation, it will obviously be difficult for her to fully compensate the victims in this case. Defense counsel, therefore, agree with the Probation Department that the Court should require her to make periodic payments after she is released from custody. In addition, Ms. Beard has informed defense counsel that she has a strong desire to make the victims whole and will make larger payments in the event she is able to do after completing her sentence.

---

[9] Pre-sentence report, § 118

### 4. Summary

Defense counsel have been baffled throughout this case by the following question: What would cause a woman in her mid-50s with a long history of working at and subsequently owning a well-respected art gallery to commit the fraud that occurred in this case?

The same thought apparently occurred to at least two of the victims, who submitted statements victims to the government in support of their claims. Victim M.F. wrote the following:

> I have known Wendy Halsted Beard for 30 years and I am confused **as we all are** of her motivation because this is not the woman I know. (Emphasis added)

In a similar vein, Victim M.E. wrote:

> First and foremost, I want to express my frustration when I found out about this situation. **As she was a trusted dealer and friend for many years**, I was incredibly surprised to learn about it. (Emphasis added)

And, as indicated above, the Probation Department stated that Ms. Beard's conduct in this case "appears to be a marked deviation from an otherwise law-abiding lifestyle."

Defense counsel have no answer to their question. What makes it even more confusing is that there is no apparent answer to another question: If Ms.

-10-

Beard took anywhere near the amount of money claimed by the victims, where did the money go? The Probation Department noted that Ms. Beard leased horses for her daughter for ten months in 2020-21,[10] but the amount of money involved comes nowhere near the millions claimed by the victims. And, as indicated in the rest of the report, Ms. Beard owns essentially nothing today.

Defense counsel, and perhaps the Court, have seen other cases where a defendant gets behind in their bills and defrauds someone thinking that they will be able to set things straight with that person, only to continue doing the same thing as in a Ponzi-type scheme. The Court will ultimately make the determination as to what occurred, why it occurred, and what type of sentence is "sufficient but not greater than necessary" to address it.

Aside from the offense itself, and Ms. Beard's state of mind in committing it, defense counsel are most concerned about Ms. Beard's health problems and the ability of the Bureau of Prisons to address them while she is incarcerated. As the Court can see from her verified health records, Ms. Beard will need a significant amount of treatment and medication during her term of incarceration. Defense counsel have had clients who, for whatever reason, did not receive their proper medication from the BOP and can only hope this does not occur with Ms. Beard.

---

[10] Pre-sentence report, § 93

## **CONCLUSION**

Wherefore, defense counsel request that the Court: (a) find that the correct sentencing guideline range is 51-63 months; and (b) after considering both the facts of the case and Ms. Beard's health problems, impose a sentence below the sentencing guideline range.

                                              Respectfully submitted,

                                              s/ Steven Fishman
                                              Steven Fishman (P23049)
                                              Pamella Szydlak (P49783)
                                              Attorneys for Defendant Beard
                                              615 Griswold, Suite #1120
                                              Detroit, MI 48226
                                              (313) 920-2001

Dated: September 4, 2024

## CERTIFICATE OF SERVICE

I certify that on September 4, 2024, I served a copy of the attached sentencing memorandum upon Ryan Particka, Assistant United States Attorney, by filing same electronically.

s/ Steven Fishman
Steven Fishman
